## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LUIS COTA,

          **PLAINTIFF,**

    v.

SUSQUEHANNA INTERNATIONAL
GROUP, LLP,

          **DEFENDANT.**

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY DEMAND

Plaintiff Luis Cota, by and through his attorneys, Bell & Bell, LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1.  This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff Luis Cota (hereinafter "Plaintiff" or "Mr. Cota"), who was formerly employed by Susquehanna International Group, LLC (hereinafter "Defendant" or "SIG"). Mr. Cota has been harmed by Defendant's discrimination and harassment as a result of a disability or because SIG perceived Mr. Cota to be disabled, otherwise inappropriate treatment during his employment, retaliation against Mr. Cota for seeking accommodation of his disability or perceived disability, and termination as a further result of discrimination and retaliation. Additionally, SIG breached its written contract with Mr. Cota, and wrongfully withheld Mr. Cota's earned wages in violation of state law.

2.  This action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Wage Payment and Collection Law, 43 Pa. C. S. §260.1, et seq. ("WPCL"), and the common law of the Commonwealth of Pennsylvania.

## JURISDICTIONAL STATEMENT

3.   This Court has original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4.   The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5.   This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6.   All conditions precedent to the institution of this suit have been fulfilled.  On July 23, 2018, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC").  On August 9, 2018, the EEOC issued a Notice of Right to Sue to Plaintiff.  This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.[1]

## VENUE

7.   This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b), because the claims arose in this judicial district.

## PARTIES

8.   Plaintiff Luis Cota is an adult male citizen and resident of Philadelphia, Pennsylvania and the United States of America.

---

[1] It has been less than one year since Plaintiff's requested dual-filing with the PHRC with respect to Defendant's violations of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").  Plaintiff will seek to amend his Complaint in this matter to add his PHRA claims after he has exhausted his administrative remedies with respect to his PHRA claims.

9.  Plaintiff is a qualified individual with disabilities within the meaning of the ADA.

10. Mr. Cota suffers from an eye condition that causes eye strain and requires the use of specialized lenses to partially alleviate these symptoms.

11. Mr. Cota's disability affects a major bodily function, his vision, and substantially limits one or more major life activities including seeing.

12. Mr. Cota's disability qualifies as a disability within the meaning of the ADA.

13. Mr. Cota's disability has affected him for a period far in excess of six months.

14. Defendant Susquehanna International Group, LLP ("SIG") is a limited liability partnership, duly organized under the laws of the State of Delaware, with a principal place of business at 401 City Avenue, Bala Cynwyd, Pennsylvania 19004.

15. At all relevant times, Defendant SIG is and has been an employer employing more than 15 employees.

16. At all relevant times, Defendant SIG acted by and through its authorized agents, servants and/or employees acting within the course and scope of their employment with SIG and in furtherance of SIG's business.

17. At all times relevant hereto, Plaintiff Luis Cota was an "employee" of Defendant within the meaning of the laws at issue in this suit and is accordingly entitled to the protections of said laws.

18. At all relevant times Defendant SIG was an "employer" and/or "person" under the ADA and the WPCL and is accordingly subject to the provisions of said laws.

19. During his employment, SIG regarded Mr. Cota as disabled.

**FACTS**

20. In June of 2016, Mr. Cota was approached about a potential role with SIG in

Philadelphia.

21.     At the time, Mr. Cota was employed in New York and had recently purchased a home in the area.

22.     Based upon representations and commitments regarding the position offered to Mr. Cota, the work that he would perform, and the compensation he should expect, including a representation regarding his expected bonus that SIG had paid a bonus every year, including during the recession, Mr. Cota relocated to the Philadelphia area and accepted a position with SIG at its Bala Cynwyd office.

23.     On or about September 1, 2016, SIG entered into a written contract of employment with Plaintiff (the "Agreement").[2]

24.     Pursuant to the Agreement, Mr. Cota was to be employed by SIG at SIG's Headquarters in Bala Cynwyd, Pennsylvania.

25.     Pursuant to the provisions of the Agreement, Mr. Cota was entitled to an annual bonus in the amount of $40,000 to $80,000 based upon factors that included Mr. Cota's performance.

26.     Despite SIG creating significant obstacles to Mr. Cota's performance, and despite a lack of resources and hostility directed at Mr. Cota by SIG, he performed his duties in an excellent manner and, in fact, received positive performance reviews.

27.     Almost immediately after beginning work in Bala Cynwyd, Mr. Cota was faced with a lack of support for his work, harassment from his coworkers and a refusal to provide him with an appropriate workspace.

---

[2] Despite the arbitration clause contained in the Agreement, Mr. Cota maintains that the arbitration clause imposes an undue burden upon him and is, therefore, invalid and unenforceable with respect to his claims.

4

28. At the time that Mr. Cota was hired, there was an understanding that Mr. Cota was being hired to grow an algorithmic credit trading business, to modernize the trading desk as a whole by making it more systematic in its operation and function.

29. Despite this understanding, there was repeated resistance to providing the necessary resources to support these objectives.

30. Mr. Cota was denied research resources, and was discouraged from engaging in activities that supported these goals, such as attending and participating in conferences.

31. Mr. Cota's ability to succeed was also impacted by inappropriate conduct from his coworkers.

32. Mr. Cota's coworkers made frequent mention of the practice of "breaking" new employees, as a rite of passage.

33. Mr. Cota was subjected to a number of hazing type pranks that appeared to be aimed at intimidating him.

34. On one occasion, a toy rat was left on Mr. Cota's desk.

35. On another occasion, Mr. Cota found a cone with a Donald Trump mask on his desk.[3]

36. Despite efforts to form relationships with his colleagues, Mr. Cota was frequently excluded from team events.

37. Mr. Cota was also excluded from dinners and outings with important contacts, which made it difficult for him to obtain data sets he needed to perform research tasks.

---

[3] Mr. Cota was uncomfortable with these activities and concerned about tolerance for these and other inappropriate practices at SIG. For example, Mr. Cota learned during his employment with SIG that members of Mr. Krasnick's team would often conduct interviews with potential candidates for the purpose of gleaning strategies from them, even though there was no intent to hire these candidates. On more than one occasion, Mr. Cota was asked to attend second interviews with candidates who were not being considered for employment for the purpose of being present while the candidates explained their trading strategies. Following these interviews, Mr. Cota was asked if he could replicate these strategies.

38.   Mr. Cota worked for Defendant from his hire in September of 2016 through his abrupt termination in January of 2018.

39.   Significantly, throughout his employment with SIG, the company refused to provide Mr. Cota with an appropriate workspace.

40.   When Mr. Cota began in his position at SIG, he was provided with a small, cramped workspace that did not contain enough room for a full keyboard.

41.   In January 2017, Mr. Cota requested a change in workspace, and was later moved to several other workspaces, all of which were inadequate.  For example, one of Mr. Cota's workspaces included an outdated workstation, including only a single 17" display, and was also problematic because it was used by other members of Mr. Cota's manager's team, who were frequently entering and exiting and making telephone calls.

42.   When Mr. Cota was given additional screens, he had significant difficulty with viewing the screens because of the lack of space provided to him and issues with his vision.

43.   After struggling with these vision issues, and attempting to alleviate eye strain and pressure with specialized lenses, Mr. Cota again approached SIG to request accommodation.

44.   When Mr. Cota disclosed that his need for a different workspace related to a medical condition, he was told that this type of request would be prioritized by SIG, however, there was no subsequent attempt to provide Mr. Cota with an appropriate space.

45.   The issues with Mr. Cota's workspace also included a failure to provide him with a basic functioning office chair.  For example, Mr. Cota was initially forced to purchase a stool from Amazon to perform his work, and was also provided with two broken desk chairs.

46.  In fact, Mr. Cota was warned that he should stop requesting "workstation upgrades." Following his requests for an improved space, Mr. Cota was shuffled to different workstations, none of which provided him with an appropriate space.

47.  During this period, Mr. Cota suffered with significant medical issues, which were exacerbated by the stress he experienced, and which caused noticeable physical changes.

48.  Despite these challenges, Mr. Cota worked diligently for Defendant, often working nights and weekends.

49.  Mr. Cota received a positive mid-year review for 2017 and was told by his supervisor, Alan Krasnick, that his work had been "very strong," especially considering all the difficulties and lack of resources.

50.  Mr. Cota received indications that he was doing well and that he should expect to be employed long-term by SIG.  During his employment, a senior member of Mr. Krasnick's team informed Mr. Cota that SIG would allow a long window for Mr. Cota's strategies to come to fruition and that there was no risk of his employment being short-lived.

51.  In late 2017, Mr. Cota scheduled surgery in early January to address some of his medical issues.

52.  Despite his dedication, strong performance, and the indications by SIG that he should expect to be employed long-term, in late January of 2018, almost immediately after his return from surgery for medical issues he had been experiencing, Mr. Cota was called into a meeting with Mr. Krasnick and Human Resources and unceremoniously terminated.

7

53. Despite his previously positive reviews, Mr. Cota was now informed that he was "not a good fit" and that he was not producing deliverables in a reasonable time frame.

54. Mr. Cota was terminated under suspicious circumstances that suggest his termination was motivated by discrimination and retaliation for seeking accommodation of a disability or perceived disability.

55. Mr. Krasnick also indicated that he believed Mr. Cota was used to having the kind of resources provided by large banks and that those who thrived at SIG were better able to "do things on their own."

56. Mr. Cota also later learned that comments had been made indicating that Mr. Krasnick believed that Mr. Cota had a poor work ethic.

57. In light of Mr. Cota's experiences at SIG, the timing of SIG's decision to terminate his employment and the surrounding circumstances, it appears that SIG management equated Mr. Cota's requests for a reasonable workspace and his subsequent medical issues and surgery with weakness and poor work ethic.

58. Plaintiff worked for the entire 2017 calendar year for SIG, and performed his duties during that time in an excellent manner.

59. Plaintiff fully performed his obligations under the Agreement and is entitled to a bonus of $80,000 for 2017 pursuant to the terms of the Agreement.

60. Mr. Cota's documented strong performance, the representations made to him at the time he was recruited, and SIG's business model indicate that Mr. Cota would have received a bonus of at least $80,000 for calendar year 2017, had he not been terminated under suspicious circumstances in January of 2018.

61. The $80,000 bonus for calendar year 2017 is earned wages as defined by the WPCL.

62.   SIG acknowledged, in writing, that bonuses are earned during the subject calendar year and not in the year in which they are paid.  A representative of SIG, communicated in writing that because Mr. Cota worked in SIG's New York office in 2016 until his transfer to the Bala Cynwyd office on January 1, 2017, "[h]is 2016 bonus, issued in March of 2017, was allocated to the State of NY where it was earned …"

63.   Any argument that Mr. Cota's bonus for 2017 was somehow not earned as of close of business on December 31, 2017 is, therefore, suspect.

64.   Defendant has indicated that it does not intend to pay Mr. Cota any amount for his bonus for calendar year 2017.

65.   Mr. Cota was not terminated for cause, and did not resign.

66.   Mr. Cota is due this significant bonus he earned prior to his termination regardless of the fact that SIG has indicated that bonuses were not typically paid until March.

67.   Defendant's failure to perform its contractual obligations and duties is without excuse or justification.

68.   Defendant's breach of the Agreement caused damages to Plaintiff, including, among other losses, lost wages and substantial legal costs, already totaling far in excess of $50,000.

69.   Plaintiff made a demand that he be paid the unpaid wages described herein.

70.   Despite the passage of more than three (3) months since his termination, and despite his requests that payment be made, Defendant has not paid the wages to which Plaintiff is entitled and which are described above.

71.   During the more than three (3) months since Plaintiff's termination, Defendant has also not paid any portion of the wages due despite Mr. Cota's requests for payment.

72. Defendant has not given written notice to Plaintiff of the amount of wages which it concedes to be due nor paid such amount without condition within the time set by the Pennsylvania Wage Payment and Collection Law.

73. There is no good faith dispute that the wages described above are owed to Plaintiff.

74. A bonus is among the types of monetary compensation that is specifically covered by the WPCL.

75. Under the WPCL, wages earned prior to termination must be paid to an employee, regardless of such termination.

76. The reason for Mr. Cota's termination is suspicious given the circumstances.

77. The reason given for Mr. Cota's termination was mere pretext for discrimination and retaliation for seeking accommodation.

78. SIG failed to reasonably accommodate Mr. Cota's disability.

79. SIG failed to engage in the requisite good-faith, interactive process with respect to accommodating Mr. Cota.

80. Mr. Cota has been discriminated against and harassed on the basis of disability and/or because SIG regarded Mr. Cota as disabled, and retaliated against for seeking accommodations in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. In further violation of the ADA, SIG failed to accommodate Mr. Cota's disability or perceived disability, failed to engage in a good faith, interactive process with respect to Mr. Cota's requests for accommodation, and retaliated against Mr. Cota for his requesting accommodations.

81. Mr. Cota has suffered mental anguish and severe emotional distress as a proximate result of the actions and inactions of Defendant.

82.  Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Mr. Cota severe emotional distress.

83.  Mr. Cota has suffered financial losses as a proximate result of the actions and inactions of Defendant.

## COUNT I
### The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

84.  Plaintiff Luis Cota repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

85.  Based on the foregoing, SIG has engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

86.  SIG violated the ADA by discriminating against and harassing Mr. Cota on the basis of disability and/or because SIG regarded Mr. Cota as disabled, and by retaliating against him.

87.  In further violation of the ADA, SIG refused Mr. Cota's requests for accommodation of his disability or perceived disability, failed to engage in a good faith, interactive process with respect to Mr. Cota's requests for accommodation, and retaliated against Mr. Cota for having requested accommodations.

88.  Said violations were intentional and willful.

89.  Said violations warrant the imposition of punitive damages.

90.  As the direct and proximate result of Defendant SIG's violations of the Americans with Disabilities Act, Plaintiff Luis Cota has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon and has incurred attorneys' fees and costs.

## COUNT II
### Breach of Contract
### Plaintiff v. SIG

91.   Plaintiff Luis Cota repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

92.   Defendant breached its written contract with Plaintiff when it failed to pay him his annual bonus of $80,000 for calendar year 2017, despite the fact that Mr. Cota worked for the entire calendar year of 2017, and earned this bonus.

93.   Plaintiff fully performed his obligations under the Agreement.

94.   Plaintiff seeks damages for breach of the Agreement.

95.   As a direct and proximate result of Defendant's breach, Plaintiff has suffered, and continues to suffer financial damages.

96.   Defendant's conduct is without excuse or justification.

## COUNT III
### Pennsylvania Wage Payment and Collection Law
### Plaintiff v. SIG

97.   Plaintiff Luis Cota repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

98.   Defendant violated the Pennsylvania Wage Payment and Collection Law ("WPCL") when it failed to pay Mr. Cota his earned wages within the time specified by law.

99.   At all relevant times, Defendant was an employer within the meaning of 43 Pa. C. S. 260.2(a) of the WPCL.

100.  Defendant willfully failed to pay Plaintiff Luis Cota wages earned during the course of his employment as defined by the WPCL within the time limits prescribed by the WPCL.

101.    Following the termination of Plaintiff Luis Cota's employment, Defendant willfully
        failed to pay Plaintiff his wages earned within the time limits prescribed by the WPCL.

102.    Defendant has failed to pay wages due for a period in excess of thirty (30) days beyond
        regularly scheduled paydays.

103.    Defendant failed to pay Mr. Cota his $80,000 bonus for calendar year 2017, which he
        earned by working for Defendant for the entire year of 2017, before being abruptly
        terminated without cause in January of 2018.

104.    As the direct and proximate result of Defendant's violation of the Pennsylvania Wage
        Payment and Collection Law, Plaintiff has sustained a loss of earnings, liquidated
        damages, and interest due thereon and has incurred attorneys' fees and costs.

105.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered, and
        continues to suffer financial damages.

**COUNT IV**
**Promissory Estoppel/Detrimental Reliance**
**Plaintiff v. All Defendants**

106.    Plaintiff Luis Cota repeats and incorporates by reference the allegations of all previous
        paragraphs as fully as though the same were set forth at length herein.

107.    For the reasons set forth above, Defendant is liable to Plaintiff under a theory of
        Promissory Estoppel or Detrimental Reliance.

**COUNT V**
**Unjust Enrichment**
**Plaintiff v. All Defendants**

108.    Plaintiff Luis Cota repeats and incorporates by reference the allegations of all previous
        paragraphs as fully as though the same were set forth at length herein.

109.    For the reasons set forth above, Defendant SIG is liable to Plaintiff under a theory of

Unjust Enrichment.

## **PRAYER FOR RELIEF**

110. Plaintiff Luis Cota repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

**WHEREFORE**, Plaintiff Luis Cota respectfully requests that this Court enter judgment in his favor and against Defendant and Order:

    a.  Appropriate equitable relief, including reinstatement or front pay;

    b.  Defendant compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination, harassment and retaliation;

    c.  Defendant compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendant's unlawful conduct;

    d.  Defendant pay Plaintiff Luis Cota damages for its breach of contract;

    e.  Defendant pay the earned but unpaid wages due to Mr. Cota;

    f.  Defendant pay Plaintiff Luis Cota punitive damages;

    g.  Defendant pay Plaintiff Luis Cota compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

    h.  Defendant pay Plaintiff Luis Cota liquidated damages;

    i.  Defendant pay Plaintiff Luis Cota's attorneys' fees;

    j.  Plaintiff be granted any and all other remedies available pursuant to the ADA, the WPCL, and the Common Law of the Commonwealth of Pennsylvania; and

    k.  Such other and further relief as is deemed just and proper.

**JURY DEMAND**

Plaintiff Luis Cota hereby demands trial by jury as to all issues so triable.

BELL & BELL LLP

By: _____

James A. Bell, IV, Esquire
Attorney ID 81724
Jennifer C. Bell, Esquire
Attorney ID 81045
Christopher A. Macey, Jr., Esquire
Attorney ID 207800
1617 John F. Kennedy Blvd.,
Suite 1254
Philadelphia, PA 19103
(215) 569-2500 (tel)
(215) 569-2220 (fax)

Attorneys for Plaintiff
Luis J. Cota

DATED: November 6, 2018